IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| RANDALL LONG, § | |
|     Petitioner § | |
| § | |
| VS. § | C.A. NO. C-05-401 |
| § | |
| DOUG DRETKE, DIRECTOR, § | |
| TEXAS DEPARTMENT OF CRIMINAL § | |
| JUSTICE–INSTITUTIONAL DIVISION, § | |
|     Respondent § | |

## MEMORANDUM AND RECOMMENDATION

Petitioner is an inmate in the Texas Department of Criminal Justice - Institutional Division, ("TDCJ-ID"), and currently is incarcerated at the McConnell Unit in Beeville, Texas. Proceeding *pro se,* petitioner filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on August 10, 2005 (D.E. 1). Petitioner makes the following claims in reference to a disciplinary hearing which resulted in the imposition of punishment: (1) There was insufficient evidence to support his disciplinary conviction; (2) TDCJ-ID officials have failed to address his time credit dispute with the result that his due process rights have been violated and (3) TDCJ-ID violated the *ex post facto* clause of the Constitution when they failed to restore good time credits he forfeited as the result of a disciplinary hearing. Respondent filed a motion to dismiss on October 19, 2005 to which petitioner responded on November 14, 2005 (D.E. 7, 9, 10).

**JURISDICTION**

Petitioner was convicted in Hardin County Texas.  At the time he filed his petition, he was incarcerated at the McConnell Unit in Beeville, Texas.  The Court has jurisdiction over his petition.  28 U.S.C. § 2241(d); Wadsworth v. Johnson, 235 F.3d 959 (5th Cir. 2000).

**BACKGROUND**

Petitioner currently is serving a 60-year sentence for a first degree murder conviction.[1]  Long v. State, 820 S.W.2d 888 (Tex.App.–Houston 1991).  He does not complain about his holding conviction, but challenges the results of a 1999 disciplinary hearing.  In disciplinary case number 990057816  petitioner was accused and found guilty of possessing contraband intended to aid him in an attempt to escape from TDCJ-ID custody (D.E. 9, Disp. Hrg. Recs.).

In the offense report, the charging officer, K. Wallace, wrote that on October 21, 1998 petitioner had in his possession a blue plastic chemical box filled with clothes, food, a black marker, insect repellant and two containers filled with powdered bleach.  The charging officer believed that petitioner intended to use the products in an attempt to escape from the custody of TDCJ-ID (D.E. 9, Disp. Hrg. Recs., p. 2).  During the pre-hearing investigation and at the hearing, petitioner maintained that he used the items with permission when he was at work in the boiler room and that he hid them in the pipe chase so that other inmates would not take them (D.E. 9, Preliminary Hearing Report; Service Investigation Work Sheet; Hearing Worksheet).

Petitioner submitted written statements from three inmate witnesses.  Inmate Bobby Butler said that petitioner always took food to the boiler room because he had a big appetite and the extra clothes were probably visiting clothes he took to the boiler room because of the shakedown.

---

[1] All of the evidence submitted in support of respondent's motion for summary judgment is located at D.E. 9.

Ronald Dagley said that petitioner hid some of his things in the boiler room to keep other inmates from taking them.  He also said that inmates working in the boiler room kept extra clothes there because there was a problem relieving the boiler room inmates for showers.  Artie Baker said he did not think petitioner intended to escape and that he probably hid his things in the boiler room because of the shakedown (D.E. 9, witness statements)

At the hearing, Wallace, the charging officer, testified that he gave Sgt. Ochoa an order to search the boiler room and he found the blue case in a door hidden underneath the building.  The items in the case were fresh and Wallace surmised that petitioner intended to use the bleach to keep dogs from being able to follow his scent during his escape (D.E. 9, Hearing Worksheet).

Petitioner was found guilty based on the charging officer's report.  He was punished with the loss of 45 days of commissary and recreation privileges, solitary confinement for 15 days, a reduction in line class from S3 to L3 and the loss of 1,095 days of good time (D.E. 9, Disciplinary Report and Hearing).  Petitioner filed Step 1 and Step 2 grievances complaining that there was no evidence that he had the intent to escape and that there was evidence that other inmates had used the same container to store their belongings.  He admitted to having some contraband items, but denied planning to escape.  Petitioner alleged that the charges were the result of a conspiracy in retaliation for his having complained earlier about assistant warden Mossbarger.  Petitioner was denied relief (D.E. 1, App. G and H).

Respondent concedes that petitioner completed the two-step grievance procedure for appealing disciplinary proceedings, but argues that petitioner did not exhaust his claim regarding the *ex post facto* application of the policy that stripped him of his good time with no opportunity for it to be reinstated.  In addition, respondent argues that petitioner's claims are time-barred and also that his claims fail on the merits.

**APPLICABLE LAW**

**A. Exhaustion of Administrative Remedies**

Before a federal court can grant an application for writ of habeas corpus, an applicant must have exhausted the remedies available in the courts of the state. 28 U.S.C. § 2254(b)(1). "To exhaust available state remedies, a habeas petitioner must fairly apprise the highest court of his state of the federal rights which were allegedly violated." Shute v. State of Texas, 117 F.3d 233, 237 (5th Cir. 1997)(internal quotations omitted). But, because Texas state courts do not review claims of lost good time or other results of prison disciplinary proceedings, a petitioner is required to pursue his claims through the administrative appeals process rather than state court. Ex Parte Palomo, 759 S.W.2d 671, 674 (Tex. Crim.App. 1988); Ex parte Brager, 704 S.W.2d 46 (Tex. Crim. App. 1985). The exhaustion requirement is mandatory and the administrative grievance procedure must be completed before a prisoner can file a law suit in federal court. Underwood v. Wilson, 151 F.3d 292 (5th Cir. 1998). Notwithstanding a petitioner's failure to exhaust state remedies, an application for a writ of habeas corpus may be denied on the merits. 28 U.S.C. § 2254(b)(2).

Respondent argues that petitioner failed to submit the *ex post facto* issues he raises in his petition in his Step 1 and Step 2 grievances. In the documents submitted by petitioner, the only place he mentioned facts relating to his *ex post facto* claim was in an "I-60" form which he claims he submitted to prison authorities but to which he never received a reply (D.E. 1, App. E). Petitioner explains that when he forfeited the good time, he thought it would be reinstated if he maintained a clean disciplinary record for a period of time. He did not realize that the forfeited good time would not be reinstated until shortly before he filed his federal law suit. Although

4

petitioner's understanding of the facts explains why he did not pursue his claim by way of a grievance at the time he forfeited the good time, it does not explain why he did not file grievances once he found out the good time would not be reinstated. Accordingly, his *ex post facto* claim is unexhausted and is subject to summary dismissal.

**B. Statute of Limitations**

Respondent also argues that petitioner's claims are barred because they were filed outside the one-year limitation period set by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). Regarding the deadline for filing an application for writ of habeas corpus, the statute provides:

> (d)(1) A 1-year period of limitation shall apply to an application for writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of --
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244. Petitioner filed his current application for writ of habeas corpus on August 10, 2005, and so is subject to the AEDPA provisions. Lindh v. Murphy, 521 U.S. 320, 117 S.Ct. 2059 (1997).

Petitioner's claim is based on the decision in the disciplinary hearing which was decided on October 26, 1998. He had one year from that date, or until October 26, 1999, to file his federal law suit. Kimbrell v. Cockrell, 311 F.3d 361, 363-64 (5th Cir. 2002). In addition, the timely pendency of prison grievance procedures tolls the one-year limitations period. Id. at 364. Petitioner's grievances were pending for a total of 37 days, which would have made his filing deadline December 4, 1999[2]. Petitioner did not file his petition until August 2005, almost six years after the deadline. Accordingly, it is time-barred.

Petitioner argues that he was mislead by prison officials into believing that his lost good time credits would be restored to him under Senate Bill 1167. He gives no details about how he was mislead. Petitioner appears to be arguing that his cause of action did not accrue until he found out his good time credits would not be restored and that under 28 U.S.C. § 2244(b) he had one year from that time to file his lawsuit. Petitioner does not discuss when it was that he found out that his good time credits were not going to be reinstated, but the policy about which he complains has been in effect and enforced since 1993. Hallmark v. Johnson, 118 F.3d 1073, 1075-76 (5th Cir. 1997). Petitioner has been incarcerated since 1985 and he was disciplined for the alleged escape attempt in 1998. Even if a prison official told petitioner that his good time would be restored, such a statement would not amount to an "impediment to filing created by State action" contemplated by the statute in the face of the published prison policy to the contrary. Accordingly, petitioner's argument that his claim was timely filed is without merit.

---

[2]His Step 1 grievance was pending from October 30, 1998 through November 13, 1998. His Step 2 grievance was pending from November 16, 1998 through December 9, 1998 (D.E. 1, Apps. G and H).

In addition, petitioner has not described a factual basis which would show that he is entitled to equitable tolling, which is permissible only in "rare and exceptional" circumstances. Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998). Equitable tolling "applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights. Excusable neglect does not support equitable tolling." Coleman v. Johnson, 184 F.3d 398, 402 (citations omitted). Because equitable tolling is available only when the petitioner meets the high hurdle of showing that (1) extraordinary circumstances (2) beyond his control (3) made it impossible to file his petition on time, equitable tolling is inappropriate in most cases. Henderson v. Johnson, 1 F.Supp.2d 650, 653 (N.D. Tex. 1998); Paige v. United States, 171 F.3d 559, 561 (8th Cir. 1999). Ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not present a rare and exceptional circumstance that would justify equitable tolling. Fisher v. Johnson, 174 F.3d 710, 713-714 (5th Cir. 1999). Petitioner has failed to allege any facts which would show that he is entitled to equitable tolling. Accordingly, his petition should be dismissed as untimely.

**C. Merits**

In the event the district court does not dismiss petitioner's claims as unexhausted or untimely, the merits are addressed below.

**1. Due Process Rights**

In order to be granted a writ of habeas corpus, a petitioner must show that he is in custody in violation of the Constitution, laws or treaties of the United States. In Sandin v. Conner, 515 U.S. 472, 483-484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995), the U.S. Supreme Court

described the limited instances in which prison inmates can make out a claim that a liberty interest has been taken without due process.

> The time has come to return to the due process principles we believe were correctly established and applied in [Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963 (1974)] and [Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532 (1976)]. Following Wolff, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

Id. (internal citations omitted). The Supreme Court held in Sandin that confinement in disciplinary segregation for twenty-three hours and ten minutes per day "did not present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest." Sandin, 515 U.S. at 486, 115 S.Ct. at 2301. The Court focused on the nature of the liberty interest at issue, finding that conditions of disciplinary segregation did not differ significantly from conditions in administrative segregation and protective custody. Id.

Petitioner seeks reinstatement of his lost good time. To the extent petitioner contends that the loss of good time affects his parole eligibility he fails to state a basis of relief. "In Texas, it is entirely speculative whether an inmate will actually obtain parole, inasmuch as there is no right to be released on parole. . . . In fact, we have expressly held that there is no constitutional expectancy of parole in Texas." Madison v. Parker, 104 F.3d 765, 768 (5th Cir. 1997). Without such an expectation, petitioner is not entitled to due process following the loss of good time credits insofar as the loss affects his eligibility for parole.

In addition to the parole scheme in Texas, some inmates are entitled to early release under a mandatory supervision program in which a prisoner sentenced to the institutional division can serve the remainder of his term outside the prison, not on parole, but under the supervision and

control of the pardons and paroles division. Id., 104 F.3d at 768 (citing TEX. CODE CRIM. P. ANN. art. 42.18 § 2(2)). Prisoners earn good time credits which are added to their actual days served in prison to calculate their release date. TEX. GOV'T CODE ANN. §508.147 (Vernon 2002).

The Fifth Circuit has determined that prior to September 1, 1996, the mandatory supervision program created a constitutional expectation of early release. Malchi v. Thaler, 211 F.3d 953, 957-958 (5th Cir. 2000). The mandatory supervision scheme was revised in 1998 and the language in the new section was designed to avoid creating a protected liberty interest. Hudson, 242 F.3d at 536, n. 1. However, despite the apparent intent of the legislature, the Fifth Circuit has not yet decided whether the loss of good time credits implicates due process concerns under the current statute, but has assumed that it does. Id. at 536. Also, the Texas Court of Criminal Appeals has held that the language of the statute does create a liberty interest in mandatory supervision. Ex Parte Geiken, 28 S.W.3d 553, 558 (Tex. Crim. App. 2000).

Petitioner is eligible for release to mandatory supervision (D.E. 9, Commitment Inquiry). Accordingly, the loss of good time credits as the result of a disciplinary hearing implicates the higher levels of due process contemplated by the Supreme Court in Wolfe. The inmate is entitled to the following process: (1) He must receive written notice of the charges; (2) He must be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals; (3) There must be a written statement by the fact finder as to the evidence relied on and reasons for the decision. Wolff, 418 U.S. at 564, 94 S.Ct. at 2979.

Petitioner received written notice of the charges and was allowed to present witness statements and the hearing officer provided a written statement about the evidence on which he

relied to find petitioner guilty. Petitioner argues that there was insufficient evidence to support a finding of guilt because there was no evidence that he intended to escape.

It is not the job of the courts to assess the weight of the evidence when reviewing a prison disciplinary hearing, but only to determine whether the guilty finding has support of some facts or any evidence at all. Hudson v. Johnson, 242 F.3d 534, 537 (5th Cir. 2001). Due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing. Superintendent, Mass. Corr. Institution v. Hill, 472 U.S. 445, 455-456, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985).

In this case, although petitioner presented evidence in support of the notion that he was allowed to have some of the items in the boiler room and that he hid the other things to keep inmates from taking them, the hearing officer was entitled to conclude that the hidden items would be useful in an escape and were intended to be used in that capacity. The items gathered and stored in a hidden location were "some evidence" of petitioner's guilt. Petitioner's argument that the decision of the hearing officer was not supported by substantial evidence is without merit.

**2. Ex Post Facto Clause**

Petitioner claims that the application of a Texas Board of Criminal Justice ("Board") policy which was put in place after the date he committed his offense constitutes a violation of the *ex post facto* clause of the constitution. U.S. Const. art. I, § 10. "*Ex post facto*" is a term of art with an established meaning at the time of the framing of the Constitution. Today, in order to comply with the *ex post facto* clause, legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts. Collins v. Youngblood, 497 U.S. 37, 42-43, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990). In evaluating whether a law violates the *ex post facto* clause, a two-prong test must be applied: (1) whether the law is retrospective in its effect

and (2) whether the law alters the definition of criminal conduct or increases the penalty by which a crime is punishable. California Dep't. of Corrections v. Morales, 514 U.S. 499, 115 S.Ct. 1597, n. 3, 131 L.Ed.2d 588 (1995).

On November 20, 1993 the Board issued a policy directive advising inmates that it was going to discontinue the restoration of good conduct time forfeited as a result of disciplinary violations and that the discontinuation applied to good conduct time that was forfeited as of the date the policy was issued as well as any time lost in the future due to disciplinary infractions. The Fifth Circuit has examined the policy directive and found that it did not violate the *ex post facto* clause because it presented only a speculative possibility of increasing an inmate's term of confinement. Hallmark, 118 F.3d at 1077-78. Petitioner's claim to the contrary should be dismissed.

### D. Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Although petitioner has not yet filed a notice of appeal, the issue of whether he is entitled to a COA will be addressed. See Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000)(a district court may *sua sponte* rule on a COA because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. Further briefing and argument on the very issues the court has just ruled on would be repetitious.").

A COA "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The COA determination under § 2253(c)

11

requires an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

Where a district court rejects the constitutional claims on the merits, the petitioner must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Slack v. Daniel, 529 U.S. 473, 484, 120 S.Ct. 1604, 146 L.Ed.2d 542 (2000). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327, 123 S.Ct. at 1034.

A slightly different standard applies when the claims are dismissed on procedural grounds. In that instance, a petitioner must show, "at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 120 S.Ct. at 1604, 529 U.S. at 484 (emphasis added).

In petitioner's case, it is recommended that his claims be dismissed on procedural grounds, and, in the alternative, on the merits. If the district court orders that petitioner's cause of action be dismissed, and petitioner seeks a COA in order to proceed with his case, it is further recommended that the COA be denied because he has not made the necessary showing for issuance of a COA on either ground.

**RECOMMENDATION**

Based on the foregoing, it is recommended that respondent's motion to dismiss (D.E. 7) be granted and petitioner's cause of action for habeas corpus relief be dismissed. It is further recommended that should petitioner seek a Certificate of Appealability, it be denied.

Respectfully submitted this 22nd day of December, 2005.

_____
B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. Douglass v. United Services Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).